```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
GROCERY HAULERS, INC.,                  :
              Plaintiff,                :
                                        :          11 Civ. 3130 (DLC)
        -v-                             :
                                        :          OPINION & ORDER
C & S WHOLESALE GROCERS, INC.,          :
              Defendant.                :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff:
William R. Fried
Stephen B. Selbst
Joshua J. Angel
Kerry K. Jardine
2 Park Avenue
New York, NY 10016

For Defendant:
Dominic J. Picca
Benjamin A. Hincks
Laurence A. Schoen
Michael J. Ticcioni
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
Chrysler Center
666 Third Avenue, 25th Floor
New York, NY 10017

DENISE COTE, District Judge:

   Plaintiff Grocery Haulers, Inc. ("Grocery Haulers"), a trucking company for food retailers, brings this action against defendant C&S Wholesale Grocers, Inc. ("C&S"), a supply and transportation business, alleging that C&S breached its trucking contract with Grocery Haulers and that C&S tortiously interfered with Grocery Haulers' trucking contract with another grocery

store.  For the following reasons, C&S's motion to dismiss two of the four claims in this action is granted.

BACKGROUND

Grocery Haulers' amended complaint (the "Complaint") asserts four causes of action:  declaratory judgment, breach of contract, tortious interference with contract, and conspiracy. Grocery Haulers alleges that C&S wrongfully ended its contract with Grocery Haulers on the ground that Grocery Haulers was diverting goods to different Key Food stores in violation of the contract terms.  According to Grocery Haulers, its contract does not prohibit diversion of goods.  Grocery Haulers separately contends that C&S conspired with The Great Atlantic & Pacific Tea Company ("A&P") to cause A&P to reject its trucking contract with Grocery Haulers in bankruptcy.

Grocery Haulers, a Delaware corporation with its principal place of business in New Jersey, is in the business of providing trucking services for food retailers.  C&S is a Vermont corporation with its principal place of business in New Hampshire; it provides trucking, warehousing and supply services for food retailers.  Two of C&S's major clients are A&P, one of the nation's largest food and drug retailers, and Key Food Stores Co-operative, Inc. ("Key Food").

In 1997, Grocery Haulers entered into a contract to provide trucking services for Pathmark Stores, Inc. ("Pathmark"). Pathmark is a wholly-owned subsidiary of A&P. Under its 1997 agreement with Pathmark (hereinafter the "Pathmark Agreement"), Grocery Haulers agreed to provide transportation services for products to be delivered to Pathmark stores from any warehouse.

Grocery Haulers entered into a trucking contract with C&S in July of 2001 (hereinafter the "C&S Agreement"). Grocery Haulers agreed to provide trucking services for merchandise housed in various C&S warehouses in New Jersey and New York. The merchandise was to be delivered to stores belonging to Key Food and A&P.

In October 2010, A&P representatives met with Grocery Haulers and represented that "A&P was seeking to change its business relationship with [Grocery Haulers], allegedly because of costs." Then, in mid-November 2010, A&P representatives notified Grocery Haulers that C&S would be taking over all of Pathmark's future trucking business.

A&P and its subsidiaries, including Pathmark, filed for Bankruptcy under Chapter 11 on December 12, 2010. By letter of January 7, 2011, C&S notified Grocery Haulers of a "partial termination" of the C&S Agreement. C&S further stated that it was contemplating closing its New Jersey warehousing facilities; these were the facilities from which Grocery Haulers retrieved

goods to be delivered under the Pathmark Agreement.  On January 14, A&P circulated requests for proposals for trucking services to several providers, including C&S; Grocery Haulers submitted a proposal in response to A&P's request.

On January 18, A&P moved to reject the Pathmark Agreement with Grocery Haulers pursuant to Section 365 of the Bankruptcy Code.  By Order of February 4, the Bankruptcy Court approved A&P's rejection of the Pathmark Agreement.[1]  A&P later renegotiated its existing contract with C&S to include the provision of trucking services previously provided by Grocery Haulers under the Pathmark Agreement.

C&S notified Grocery Haulers on May 5 of its intention to end Grocery Haulers' delivery responsibilities under the C&S Agreement.  C&S asserted that Grocery Haulers' diversion of shipments of goods from the intended recipient Key Food store to a different Key Food store constituted a breach of the C&S Agreement.  Grocery Haulers asserts that the C&S Agreement does not prohibit diversion of goods and that the diversion was undertaken at the request of the recipient Key Food stores.

---

[1] Grocery Haulers moves to preclude the Court from relying upon the parties' briefing on the motion to reject the Pathmark Agreement and the transcript of a February 2 hearing before the Bankruptcy Court in deciding C&S's motion to dismiss.  These documents were submitted by C&S in support of its partial motion to dismiss.  The Court has not considered them in deciding the motion.

Grocery Haulers filed its original complaint on May 9, 2011. After a May 10 conference with the parties, on May 11 the Court temporarily restrained C&S from terminating the C&S Agreement. By Order of July 13, and with the consent of the parties, the Court consolidated the injunctive phase of the case with a trial on the merits. The July 13 Order required that fact discovery be completed by November 30 and expert discovery be completed by February 10, 2012. In the event no motion for summary judgment is filed, the joint pretrial order is due on March 30, 2012.

Grocery Haulers amended its complaint on June 27. The Complaint seeks a declaration that Grocery Haulers has not breached the Trucking Agreement with C&S and a preliminary injunction to prevent C&S from breaching the Trucking Agreement. The Complaint further seeks up to $100 million in damages for C&S's tortious interference and conspiracy to interfere with the Pathmark Agreement. On July 20, C&S filed a partial motion to dismiss the tortious interference and civil conspiracy claims against it. The motion was fully submitted on August 19.

DISCUSSION

C&S primarily asserts that because A&P rejected the Pathmark Agreement pursuant to the Bankruptcy Code and with the authorization of the Bankruptcy Court, Grocery Haulers has not

alleged that any conduct by C&S was the cause of A&P's rejection of the Pathmark Agreement.  C&S further argues that Grocery Haulers has not alleged that C&S acted out of malice or used improper means to induce A&P to reject the contract.  Finally, C&S asserts that civil conspiracy is not recognized as an independent tort under New York law.

On a motion to dismiss the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).  The court is "not bound to accept as true legal conclusions couched as factual allegations.  Only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009)).

The parties do not argue that the law of a state other than New York should apply here, and the Second Circuit has held that "where the parties agree that New York law controls, this is sufficient to establish choice of law."  Federal Ins. Co. v. American Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011). Under New York law, the elements of tortious interference with a business relationship are "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful

6

purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." <u>Catskill Dev., L.L.C. v. Park Place Entm't Corp.</u>, 547 F.3d 115, 132 (2d Cir. 2008) (citation omitted).  "Intentional procurement of a breach is an essential element of the tort of interference with contractual relations.  A plaintiff must allege that there would not have been a breach but for the activities of defendants." <u>Sharma v. Skaarup Ship Management Corp.</u>, 916 F.2d 820, 828 (2d Cir. 1990) (citation omitted) (New York law).

Grocery Haulers has failed to allege that C&S's actions were the "but for" cause of A&P's rejection of the Pathmark Agreement in bankruptcy.  The facts alleged in the Complaint suggest that A&P was motivated by a desire to lower costs given its uncertain financial state.  In the Complaint, Grocery Haulers acknowledges that A&P broached the subject of renegotiating the Pathmark Agreement in October 2010 due to concerns about costs.  After filing for bankruptcy on December 12, 2010, A&P solicited proposals for trucking services; Grocery Haulers responded to the request for proposals.  Thus, Grocery Haulers was given an opportunity to compete for A&P's trucking business, but A&P ultimately decided to choose C&S as its trucker.  The Complaint suggests at most that C&S presented itself to A&P as a lower-cost alternative to Grocery Haulers, and that A&P used its powers under the Bankruptcy Code to reject

7

its existing contract with Grocery Haulers and shift its business to C&S.  Section 365 of the Bankruptcy Code permits a debtor in possession to "assume or reject any executory contract" of the debtor.  11 U.S.C. § 365(a).  Accordingly, Grocery Haulers has not alleged facts sufficient to give rise to an inference that A&P would not have rejected the Pathmark Agreement but for C&S's actions.

New York law does not recognize the independent tort of civil conspiracy.  Crigger v. Fahnestock and Co., Inc., 443 F.3d 230, 237 (2d Cir. 2006).  Thus, there can be no actionable claim of civil conspiracy when the underlying tort has not been adequately pleaded.  Id.  Since Grocery Haulers fails to state a claim for tortious interference with contract against C&S, its claim for civil conspiracy must also fail.

Grocery Haulers moves for permission to amend its Complaint for a second time in the event the Court finds that it fails to state claims for tortious interference with contract and civil conspiracy.  "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

If permitted to amend the Complaint, Grocery Haulers would allege facts regarding C&S's closing of its Woodbridge, New

8

Jersey warehouse just prior to A&P's filing for bankruptcy that would suggest that C&S was attempting to put Grocery Haulers out of business by closing the warehouse. Grocery Haulers would also make clear that it is asserting a civil conspiracy by C&S to commit tortious interference with the Pathmark Agreement, rather than asserting civil conspiracy as an independent tort. Neither of these additions would change the outcome here, however. Regardless of C&S's motives in closing the Woodbridge warehouse, Grocery Haulers has not pleaded that A&P would not have rejected the Pathmark Agreement but for C&S's pursuit of A&P's trucking business. And if the claim for tortious interference fails, the civil conspiracy claim fails too regardless of whether it is plead separately or in conjunction with the tortious interference claim. Accordingly, Grocery Hauler's motion to amend the Complaint is denied.

## CONCLUSION

C&S's July 20, 2011 partial motion to dismiss is granted.

SO ORDERED:

Dated:   New York, New York
         September 12, 2011

                                    _____
                                         DENISE COTE
                                    United States District Judge