UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GROCERY HAULERS, INC.,                          :
                                                :
                              Plaintiff,         :         11 Civ. 3130 (JSR)
                                                :
              -against-                          :
                                                :
                                                :
C & S WHOLESALE GROCERS, INC.,                  :
                                                :
                              Defendant.         :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GROCERY HAULERS, INC.'S PROPOSED JURY INSTRUCTIONS

**BLANK ROME LLP**
*Attorneys for plaintiff*
    *Grocery Haulers, Inc.*
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

James V. Masella, III
Philippe M. Salomon
Michelle Gitlitz Courtney
Rebecca L. Avrutin
        *Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GROCERY HAULERS, INC., :
 

        Plaintiff, :       11 Civ. 3130 (JSR)

    -against- :       **GROCERY HAULERS,**
                 :        **INC.'S PROPOSED**
                 :        <u>**JURY INSTRUCTIONS**</u>

C & S WHOLESALE GROCERS, INC., :
 

        Defendant. :
 

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    Plaintiff Grocery Haulers, Inc. submits the annexed Jury Instructions and respectfully

requests that the Court incorporate them into its standing instructions to the Jury.

Dated:  New York, New York
     January 22, 2013

               **BLANK ROME LLP**
               *Attorneys for plaintiff Grocery Haulers, Inc.*

       By:  <u>/s/ Philippe M. Salomon</u>
          James V. Masella, III
          Philippe M. Salomon
          Michelle Gitlitz Courtney
          Rebecca L. Avrutin
          The Chrysler Building
          405 Lexington Avenue
          New York, New York 10174
          (212) 885-5000

## INTRODUCTION

As you have now heard, this is a breach of contract case. Plaintiff Grocery Haulers, Inc. ("Grocery Haulers") seeks a decision or verdict from you that it did not materially and willfully breach the Trucking Agreement when it delivered certain grocery products to locations that were not expressly designated in the Trucking Agreement. Additionally, Grocery Haulers seeks a decision or verdict from you that it did not cause material damages to C&S Wholesale Grocers, Inc. ("C&S") when it diverted the deliveries. Alternatively, C&S seeks a decision or verdict from you that Grocery Haulers materially and willfully breached the Trucking Agreement, caused C&S material damages and is, therefore, entitled to terminate the Trucking Agreement and recover damages.

You are to decide these questions of fact. You are the sole judges of the facts and nothing that I or the lawyers said or did may encroach in any way upon your role as the exclusive fact-finders. When it comes to the law, however, you are to take instruction from me, and you are bound by the oath you took to follow those instructions. You must adhere and accept the rules of law that I give you and may not substitute your own notions or thoughts of what the law is, or what you think it should be. Your job is to determine, on the competent evidence that was presented, which of the two parties has proven its position based on the law as I will now give it to you.

Members of the jury, we now come to that portion of the trial when you are instructed on the law applicable to the case and after which you will retire for your final deliberations. You have now heard all the evidence introduced by the parties and through arguments of their attorneys, and you have learned the conclusions that each party believes should be drawn from the evidence presented to you.

1

## **BREACH OF CONTRACT**

I have previously found, and I now instruct you, that as a matter of law, Grocery Haulers breached Section 2.01 of the Trucking Agreement, as amended, by delivering grocery goods that were purchased by a Key Food store to stores that were not listed in that contract. I have also found, as a matter of law, and now instruct you, that because of such diverted deliveries, Grocery Haulers violated a subsection of the federal Motor Carrier Act because, in certain instances, Grocery Haulers did not report the accurate transportation charges for delivery to an unlisted location on the invoices that it submitted to C&S. It remains, however, and I will instruct you further, for you to decide whether the alleged inaccuracies on the invoices reflect a failure to disclose "actual charges" and whether C&S was damaged by such conduct. Lastly, I have found, as a matter of law, that because of the statutory violation, Grocery Haulers breached Section 6.01 of the Trucking Agreement, as amended, when it promised to comply with all applicable laws.

Under New York law, a breach, by itself, is not enough to establish a breach of contract claim. In order to be actionable, the breach must be material, have caused material damages to the non-breaching party and was not curable or subject to correction. Accordingly, Grocery Haulers contends that its delivery of grocery products, at Key Food's direction, to locations other than Key Food stores identified in the Trucking Agreement, did not constitute a material breach of the Trucking Agreement. C&S contends that it does.

A.    Materiality

Materiality under the law requires that the breach be very important, substantial and

2

significant, and defeats the very root and essence of the Trucking Agreement.[1]  The breach must be one that touches the fundamental purposes of the contract and the objectives for which the parties entered into the Trucking Agreement.[2]

Grocery Haulers contends that the core purpose of the Trucking Agreement was for Grocery Haulers to provide trucking services to C&S together with a long-term purchase commitment from Key Food to purchase products from C&S.  If you find, by a preponderance of the evidence, that any diversion of grocery deliveries by Grocery Haulers at Key Food's direction did not contradict the over-all intent and root purposes of the parties' relationship as set forth in the Trucking Agreement, then you must find in favor of Grocery Haulers and that the breach was not material.

Similarly, if you find, by a preponderance of the evidence, that any diversion did not defeat the core objectives of the parties in entering into the Trucking Agreement, you must find that the breach was not material and render a verdict in favor of Grocery Haulers that it did not materially breach the Trucking Agreement.

Additionally, if you find by a preponderance of the evidence, that any diversion was proportionally insignificant, or nominal, so as not to deprive C&S of the over-all benefits it reasonably expected to receive under the Trucking Agreement, you must find that the breach was not material and that Grocery Haulers did not materially breach the Trucking Agreement.  In that circumstance, you must find that C&S could not terminate the Trucking Agreement because of a breach of contract.

---

[1] *Wechsler* v. *Hunt Health Systems, Ltd.*, 330 F. Supp. 2d 383, 415 (S.D.N.Y. 2004) (citing *Felix Frank Assocs., Ltd.* v. *Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997); corrected opinion at No. 96-7604, 1997 U.S. App. LEXIS 19795 (2d. Cir. Apr. 10, 1995)).

[2] *Id*. at 414.

B.     Cure

The Trucking Agreement at Section 5.02 required C&S to provide Grocery Haulers with notice of the breach and an opportunity to cure or correct any material breach prior to terminating the contract.  The parties agree that C&S did not provide such a notice and opportunity.  New York law and the Trucking Agreement require, however, that the material breach must first be curable in order to trigger the requirement that C&S give notice and provide Grocery Haulers with an opportunity to cure.[3]  Curable means that there must be a feasible, possible or meaningful gesture or measure that can be employed or used to correct the specified wrongful conduct.[4]

If you find, by a preponderance of the evidence, that the diversion of grocery deliveries by Grocery Haulers at Key Food's direction could have been stopped or corrected had C&S given notice to Grocery Haulers that it did not approve of such conduct, or deemed it a material breach of the Trucking Agreement, then you must find that this conduct was curable.

If you find, by a preponderance of the evidence, that Grocery Haulers stopped making diverted deliveries when or before C&S told Grocery Haulers that C&S disapproved of such conduct, then you must find that such a breach was curable.

If you find, by a preponderance of the evidence, that the diversion of grocery deliveries by Grocery Haulers was curable and, therefore, pursuant to Section 5.02 of the Trucking Agreement, C&S was obligated to, but did not, provide Grocery Haulers with notice and an opportunity to cure the material breach, then you must find in favor of Grocery Haulers that C&S had no right to terminate the Trucking Agreement on the basis of a breach of contract.

---

[3] *Raymond Weil* v. *Theron*, 585 F. Supp. 2d 473, 484 (S.D.N.Y. 2008).

[4] *Id.* (the "breach is perfectly curable as demonstrated by the fact that the breach was cured").

C.      Damages

To prevail on a breach of contract claim, the non-breaching party, C&S here, must prove that it sustained damages as a direct result of the material breach.[5]   Damages are the amount necessary to put the non-breaching party in the same economic position it would have been in had the breaching party fulfilled the contract.[6]   When determining damages for a breaching party's wrongful conduct, if any benefit, or opportunity for benefit, was provided to the non-breaching party, a balance must be made between the benefit and the loss.[7]   The breaching party is only responsible for the net loss.[8]

The law recognizes that contractual breaches may create not only a loss, but also a benefit, or even unexpected beneficial opportunities.[9]   The law requires that there be an equalization of any benefits conferred against any actual and demonstrable loss sustained.[10]

Grocery Haulers argues that the diversion of the deliveries of grocery products at the direction of Key Food was of substantial value to C&S because, among other reasons, Key Food substantially increased the size of its orders from C&S, and Key Food paid for these additional orders.  Grocery Haulers contends that C&S made a net profit on these diverted deliveries that it

---

[5] Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Grocery Haulers, Inc.* v. *C&S Wholesale Grocers, Inc.*, No. 11 Civ. 3130 (DLC) (S.D.N.Y. September 14, 2012), at 42 (citing *Fischer & Mandell, LLP* v. *Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)).

[6] *Indu Craft, Inc.* v. *Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995) (citation omitted).

[7] *Id.* (citing *S&K Sales Co.* v. *Nike, Inc.*, 816 F.2d 843, 852 (2d Cir. 1987)).

[8] *S&K Sales*, 816 F.2d at 852.

[9] *Id.*

[10] *Indu Craft*, 47 F.3d at 495.

5

would not otherwise have made.

If you find, by a preponderance of the evidence, that Grocery Haulers conferred a benefit upon C&S as a result of the diversions and that the benefit exceeded any demonstrable loss that C&S sustained, then you must find that C&S did not incur material damages and you must find for Grocery Haulers that it did not materially breach the Trucking Agreement.

If you find, by a preponderance of the evidence, that C&S did not sustain a net loss as a result of the diverted deliveries, then you must find that C&S did not incur any damages and that Grocery Haulers did not materially breach the Trucking Agreement.

Grocery Haulers also argues that pursuant to the Supply Agreement between Key Food and C&S, Key Food paid C&S for the transportation costs and expenses that Grocery Haulers billed C&S for the diverted deliveries. If you find, by a preponderance of the evidence, that Key Food actually paid the transportation costs that Grocery Haulers invoiced C&S, you must find that C&S did not sustain any material damages as a direct result of this billing and you must find for Grocery Haulers that it did not materially breach the Trucking Agreement.

## CUSTOMARY PRACTICE IN THE TRANSPORTATION INDUSTRY

In deciding whether Grocery Haulers materially and willfully breached the Trucking Agreement, you may also consider standard industry custom and practice. You have heard expert testimony that diversion, re-consignment or re-routing of products by the purchasing entity is a generally accepted practice in the transportation industry. If you conclude that such practices are common in the industry, you may consider that fact in determining whether Grocery Haulers materially and willfully breached the Trucking Agreement.

If you find, by a preponderance of the evidence, that the Trucking Agreement does not prohibit diversion or re-consignment, then you must find that GHI did not materially breach the Trucking Agreement when at Key Food's direction, Grocery Haulers delivered the grocery products, bought by a Key Food store, to another location.

If you find, by a preponderance of the evidence, that Key Food was the consignee on all shipments and that it received, and paid for, then you must find that GHI, which was contractually obligated to deliver the goods, did not materially breach the Trucking Agreement when it delivered the grocery products at the instruction of Key Food.

If you find, by a preponderance of the evidence, that Grocery Haulers complied with industry custom and practice when it delivered the grocery products at the instruction of Key Food, then you must find that Grocery Haulers did not act willfully and did not materially breach the Trucking Agreement.

7

## DECLARATORY JUDGMENT

Grocery Haulers seeks a declaration that C&S cannot terminate the Trucking Agreement, as amended, because Grocery Haulers did not materially breach the contract.  Proper termination of the Trucking Agreement by C&S requires (1) breach of a contractual obligation by Grocery Haulers that is (2) material and (3) not subject to cure and (4) caused damages.[11]  Additionally, Section 5.05(a) of the Trucking Agreement provides that C&S can only terminate the contract and stop paying the Management Fee, if C&S can prove, by a preponderance of the evidence, that Grocery Haulers acted in willful breach or with gross negligence.

Willful means that it must be intentional, purposeful, or with a singular wrongful intent.[12] Gross negligence means wanton, intentional or reckless conduct without regard to the harmful consequences which may ensue.[13]

If you find, by a preponderance of the evidence, that Grocery Haulers did not materially breach the Trucking Agreement and that the conduct was curable, then you must find for Grocery Haulers and C&S did not have the right to terminate the Trucking Agreement.

If you find, by a preponderance of the evidence, that Grocery Haulers did not act willfully, or with gross negligence, to harm C&S, when Grocery Haulers diverted deliveries at

---

[11] Decision on Summary Judgment (Cote, J.) at 28, 33.

[12] *Graham* v. *James*, 144 F.3d 229,  237-238 (2d Cir. 1998) (for a breach to be willful, a party must take affirmative steps); *Septembertide Publishing, B.V.* v. *Stein and Day, Inc.*, 884 F.2d 675 (2d Cir. 1989) ("no willfulness may be inferred from the circumstances in the case at bar since it is plain that" the defendant's thinking "may have been careless wishful thinking, [but] it was not willful").

[13] *2006 Frank Calandra, Jr. Irrevocable Trust* v. *Signature Bank Corp.*, No. 11-4090, 2012 U.S. App. LEXIS 23839, *5-*6 (2d Cir. Nov. 20, 2012) ("gross negligence requires an additional showing that the defendant's conduct evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing") (citation omitted).

the direction of Key Food, then you must find for Grocery Haulers and that C&S did not have

the right to terminate the contract on the grounds that there was a breach of contract.

## MOTOR CARRIER ACT

I have previously instructed you that I have found as a matter of law that Grocery Haulers violated Subsection (a) of Section 13708 of the federal Motor Carrier Act. That subsection, entitled "Disclosure," required Grocery Haulers to disclose in its invoices to C&S the actual charges for its transportation services. I have found, as a matter of law, that in certain instances, Grocery Haulers submitted inaccurate mileage figures, and State road use taxes on the Invoices.

There remains a factual dispute whether the alleged inaccuracies in the "Labor Total" field of the Invoices constituted a failure to disclose. If you find by a preponderance of the evidence, that those charges are simply appropriate compensation for the drivers' time, as Grocery Haulers contends, then you must find in favor of Grocery Haulers and that there was no violation of the Statute.

C&S contends that it suffered actual damages as a result of the inaccurate disclosures in violation of Subsection (a) of Section 13708 of the Motor Carrier Act. If you find, by a preponderance of the evidence, that C&S did not sustain any damages as a direct result of these disclosures, then you must find in favor of Grocery Haulers.

## Certificate of Service

I hereby certify that a true and correct copy of plaintiff Grocery Haulers, Inc.'s Proposed Jury Instructions, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 22, 2013.

/s/ Rebecca L. Avrutin_____

11