```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
GROCERY HAULERS, INC.,                :
                                      :
         Plaintiff,                   :
                                      :
                                      :             11 Civ. 3130 (JSR)
         -v-                          :
                                      :             MEMORANDUM ORDER
C & S WHOLESALE GROCERS, INC.,        :
                                      :
         Defendant.                   :
------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

     This Memorandum Order sets forth the reasons for the Court's "bottom-line" order of December 28, 2012. By way of background, on October 15, 2012, this case was reassigned to this Court from District Judge Denise Cote. Before the reassignment, defendant C&S Wholesale Grocers, Inc. ("C&S") moved for summary judgment on its counterclaim alleging that plaintiff Grocery Haulers, Inc. ("GHI") violated 49 U.S.C. § 13708, while GHI moved for summary judgment on its claim for a declaratory judgment that C&S had no authority to terminate the parties' 2001 trucking agreement and on each of C&S's counterclaims. On September 14, 2012, just over one month before the reassignment, Judge Cote filed an opinion and order deciding these dueling motions for summary judgment. Judge Cote denied C&S's motion for summary judgment and granted, in part, GHI's motion. See Op. & Order of Sept. 14, 2012, at 1-2 ("SJ Op.").

     The Court presumes familiarity with Judge Cote's September 14, 2012, opinion and order. Nevertheless, a brief review is in order. The parties' dispute arises from a trucking agreement ("the agreement")

between C&S and GHI. Pursuant to that agreement GHI was to act as "Carrier" and provide trucking services to C&S, which acted as the "Shipper." For GHI's provision of delivery services, C&S compensated GHI for its costs, as well as paying an annual management fee of $2,250,000. See SJ Op. at 2-3.

As Carrier, GHI was to deliver C&S's groceries to certain stores, though the parties vigorously dispute whether the agreement permitted delivery only to a discrete set of listed "Key Foods" stores or, instead, provided a broader permit for GHI to deliver to "unlisted locations" at the direction of others. Id. at 3. Thus the case concerns, among other things, whether GHI violated the agreement by making deliveries to certain locations without C&S's approval or knowledge, and, what legal consequences, if any, should follow from a determination that GHI breached the agreement.

Section 2.01 of the agreement reads, in pertinent part, as follows:

> Grocery Deliveries: Shipper hereby engages Carrier, and Carrier hereby agrees to perform for Shipper that level of grocery deliveries to the Stores as historically performed by the Carrier so that Carrier will employ a roster of no more than 30 full time drivers for such deliveries.

In urging Judge Cote to grant it summary judgment declaring that it had not breached, GHI argued that "to the Stores" is not limiting, and that other provisions of the agreement effectively granted GHI and others discretion to determine the precise routing of deliveries. In her opinion denying GHI's motion, Judge Cote determined that "to the Stores," when "read objectively and in context" has "only one meaning. It means, as C&S contends, that Grocery Haulers is obligated . . . to

deliver groceries to the Listed Locations." SJ Op. at 31. Moreover, "[t]he relevant language in Section 2.01 is not a general provision. It addresses where or to whom deliveries will be shipped." Id. at 32.

Judge Cote also held that GHI, in failing to disclose certain of its actual charges to C&S, violated Section 13708(a) of the Motor Carrier Act (the "truth in billing" statute) "as a matter of law." SJ Op. at 17. Consequently, Judge Cote further held as a matter of law that GHI breached its obligations under section 6.01 of the agreement, titled "Compliance with Applicable Law," by which GHI covenanted that, "[i]n performing its obligations hereunder, it will comply with all applicable laws, rules, regulations, ordinances, orders and other governmental requirements."

In sum, while Judge Cote denied summary judgment in certain respects, her opinion clearly interpreted the contract as a matter of law and concluded that "Grocery Haulers breached Sections 2.01 and 6.01 of the Trucking Agreement." Id. at 42. After the case was reassigned, however, the parties raised, and heavily contested, the question of whether these holdings in Judge Cote's opinion were "law of the case" for purposes of the forthcoming trial scheduled for January 29, 2013.

GHI argued that because Judge Cote delivered many of these adverse rulings in response to GHI's motion for a declaration that it did not breach the contract -- rather than in a separate motion by C&S that GHI did breach -- it would be improper for this Court to treat these holdings as law of the case since they arose from a motion in which, by virtue of the procedural posture, all adverse inferences

were drawn against GHI. GHI further argued that, even if Judge Cote's holdings were unambiguous interpretations of the contract as a matter of law, the procedural posture in which these rulings were made meant that GHI did not have reason to make the same presentation it would have made if C&S had moved for summary judgment on each of C&S's counterclaims.

The Court permitted the parties to brief the matter, and permitted GHI to come forward with the arguments and evidence it suggested it would have offered had the motion before Judge Cote originally been framed as C&S's motion for summary judgment that GHI had breached Sections 2.01 and 6.01.

After full consideration of the parties' oral arguments and the briefs, on December 28, 2012, the Court ruled by "bottom-line" order that Judge Cote's rulings that GHI breached Sections 2.01 and 6.01 of the Trucking Agreement are, indeed, law of the case and are not impaired by the procedural posture of the prior motions for summary judgment. Specifically, the Court determined that it remains law of the case that GHI breached section 2.01 of the trucking agreement as a matter of law by delivering goods to stores not listed in the contract; (2) that certain of GHI's bills to C&S violated subsection (a) of the federal "Truth in Billing" statute, 49 U.S.C. § 13708; and (3) that, because of GHI's violation of this "applicable law," GHI also violated section 6.01 of the agreement, covenanting "compliance with applicable law." Additionally, having given GHI both notice of its contemplated rulings and the opportunity to come forward

with the evidence and arguments GHI claims to have withheld in its earlier proceedings before Judge Cote, the Court granted, sua sponte, partial summary judgment in favor of C&S, holding that GHI had breached sections 2.01 and 6.01 of the agreement. This Memorandum Order confirms the Court's bottom-line rulings and sets forth the Court's reasons for these rulings.

The doctrine of the law of the case "posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case. Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." Aramony v. United Way of America, 254 F.3d 403, 410 (2d Cir. 2001) (internal quotation marks and citation omitted). The doctrine is discretionary, and "expresses, in shorthand fashion, a practice of courts generally not to reconsider that which has already been decided." Rezzonico v. H & R Block, Inc., 182 F.3d 144, 149 (2d Cir. 1999).

The Court, fully agreeing with Judge Cote's careful reasoning and analysis, sees no reason not to accord law of the case status to her aforementioned rulings. GHI's arguments to the contrary are unpersuasive. Judge Cote's determinations rested not on construing inferences or ambiguities of fact, but rather on uncontroversial principles of contract construction as applied to a factual record

that was, in the pertinent parts, undisputed. Accord Cary Oil Co. v. MG Ref. & Mktg., Inc., 257 F.Supp.2d 751, 764 (S.D.N.Y. 2003).[1]

Additionally, as noted, this Court allowed GHI to supplement its earlier briefing with additional argument and evidence why it did not violate Sections 2.01 and 6.01. Indeed, for the avoidance of doubt, the Court, before issuing its bottom-line order, reviewed all of the evidence GHI had offered at any stage to resist the legal conclusion that it breached sections 2.01 and 6.01 of the agreement, as well as the conclusion that certain of its bills violated Section 13708(a) of the Motor Carrier Act as a matter of law. Having done so, this Court independently concluded that Judge Cote's determination remained correct in all respects.

Among other arguments newly presented to this Court, GHI argued that it did not breach section 2.01 of the agreement because within that contract provision, "the stores" is putatively modified by the phrase "as historically performed." GHI Mem. at 2-4. On GHI's reading of the agreement, its deliveries to unlisted locations were permissible because they were consistent with the customary practice of the parties to permit deliveries to unlisted locations.

In support of this conclusion, GHI, while purporting to disavow the need to turn to "parole [sic] evidence," GHI Mem. at 2

---

[1] Judge Kram's dicta in Young v. Calhoun, No. 85 Civ. 7584 (SWK), 1995 WL 169020, at *8 (S.D.N.Y. April 10, 1995), on which GHI relies, are not to the contrary, for Judge Kram herself later distinguished those dicta from situations in which a court's prior opinion involves "issue[s] . . . found to rest on legal, rather than factual determinations by the Court." National Union Fire Ins. Co. v. L.E.

n.3, nevertheless urged the Court to consider the drafting history of the agreement. To that end, GHI argued that an earlier, July 2001 agreement between the parties included language that used "to the Stores" to limit the goods GHI may ship (rather than the locations to which GHI may ship). GHI further argued that pursuant to the July 2001 agreement, C&S periodically directed GHI to deliver to unlisted stores, and that this historical practice was embodied in the 2003 agreement at issue in this case. Id. at 3-4. In addition, GHI argued that a November 2002 draft of the agreement replaced the phrase "all of shipper's requirements during the Term with respect to the transport and delivery of grocery products sold by Shipper to the Stores" with "the same percentage of the total grocery deliveries to the Stores that Carrier has historically performed hereunder." Id. at 5. GHI argued that this amendment "can only be read as an acknowledgment" that GHI delivered less than one-hundred percent of its deliveries "to the Stores." Id.

GHI's new evidence does not disturb Judge Cote's original conclusions. It is hornbook law in New York that "extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." W.W.W. Assoc. v. Giancontieri, 77 N.Y.2d 157, 163 (N.Y. 1990). Where, as here, the clause at issue is clear and unambiguous, there is no need to look beyond the four corners of the contract. C&S engaged GHI to perform "that level of grocery deliveries to the Stores as

---

Myers Group, 937 F.Supp. 276, 286 n.4. (S.D.N.Y. 1996).

historically performed." As Judge Cote held, "to the stores" limits the destinations to which GHI should provide "deliveries": "The relevant language in Section 2.01 is not a general provision. It addresses where or to whom deliveries will be shipped." SJ Op. at 32. Indeed, as Judge Cote noted, "to the Stores" uses a defined term in the agreement. Section 1.01 specifies that "Stores" means "all existing Key Food stores as itemized on Schedule 1.01(d), for so long as they continue to operate and (ii) all new Key Food stores operating under license from Kay Food Stores Cooperative, Inc. under the 'Key Food' and any other banner sponsored by the Key Food organization." SJ Op. at 31. Thus, insofar as "historically performed" is relevant to the interpretation of section 2.01, the Court determines as a matter of law that "as historically performed" modifies "that level," and not the permissible destinations for deliveries.

Furthermore, GHI's new evidence, parol or otherwise, would do nothing to alter this Court's or Judge Cote's construction of section 2.01 even if it were considered. In the initial summary judgment briefing, GHI itself endorsed the obvious alternative (and almost certainly correct) meaning of the "historical performance" language in section 2.01. Mr. Rishty, GHI's Chief Financial Officer, submitted an affidavit in support of GHI's motion for summary judgment averring that C&S inserted the "historical performance" clause because it "did not want GHI to perform any greater amount of deliveries of grocery product that GHI was performing at the time." Aff. of Eddie Rishty of May 14, 2012, at ¶ 10. The Court finds that were it to consider

8

extrinsic evidence of the drafting history, the inclusion of the "historical performance" language memorializes the parties' intent to limit the amount of deliveries, not their intent to expand GHI's discretion to deliver goods to unlisted locations. No reasonable juror could decide that the drafting history of the agreement demonstrates that the parties intended to allow GHI the discretion to deliver some unspecified remainder of its deliveries to places other than "the Stores" described in the agreement.

Turning to GHI's second set of new arguments, regarding why it did not breach section 6.01 of the agreement (i.e., the covenant to comply with applicable law), the Court notes as a preliminary matter that C&S did, in fact, move for summary judgment on its counterclaim for GHI's violation of Section 13708(a) of the "truth in billing" statute. Though Judge Cote denied C&S's motion regarding the entirety of the counterclaim, for which C&S would have to prove damages as a matter of law and for which some transactions still raised material disputes of fact, she expressly determined that "Grocery Haulers violated subsection (a) of Section 13708 as a matter of law" in failing to disclose its actual charges for certain deliveries. SJ Op. at 17. As described above, this ends the enquiry and Judge Cote's summary judgment opinion is law of the case.

Nevertheless, GHI has used the occasion of this round of letter briefing to re-litigate its breach of section 6.01, and now argues that its submission of inaccurate charges to C&S could not amount to a violation of the truth-in-billing statute (and thus

9

section 6.01 of the agreement) because "the parties expressly waived any rights and remedies under [the statute]." GHI Mem. at 6. GHI argues that because the agreement contracts for fees to be paid on an "estimated" basis, GHI's invoices were merely estimates subject to future reconciliation. Id. In support of its waiver argument, GHI directs the Court to section 14101(b)(1) of the Motor Carrier Act, which provides that where parties waive the rights provided by the Truth in Billing statute, that waiver effectively expresses the parties' intent not to be bound by the statute and precludes a party from challenging the other's performance on the grounds of violating the statute. Id. at 7 (quoting 49 U.S.C. § 14101(b)(1)).

Even if GHI's new arguments about C&S's putative waiver of its rights under the truth-in-billing statute were not foreclosed by the application of the law of the case doctrine, the Court would still find it appropriate to grant limited summary judgment in C&S's favor as to breach of section 6.01. The applicable waiver provision only applies where the parties "in writing, expressly waive any or all rights and remedies . . . ." 49 U.S.C. § 14101(b)(1). At best, GHI's argument amounts only to the assertion that the agreement's reference to "estimates" operates as an implied waiver of C&S's statutory rights and remedies. This language in the agreement is insufficient to constitute an express, in-writing waiver of any and all rights as required by the plain terms of the statute.

Contrary to GHI's briefing, Babcock & Wilcox Co. v. Kan. City S. Ry. Co., 557 F.3d 134 (3d Cir. 2009), directs no contrary result.

That decision (which is not binding on this Court in any event) involves interpretation of a different statute for rail carriers, which contains no similar requirement that the parties "in writing, expressly waive" their rights before permitting parties to opt out of the applicable federal regulatory scheme. Compare 49 U.S.C. § 10709(a)-(b) with 49 U.S.C. § 14101(b)(1).

Finally, the Court notes that it is appropriate to grant summary judgment sua sponte so long as care is taken to assure "the losing party was on notice that [it] had to come forward with all of [its] evidence." Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). Having given GHI both notice of its contemplated ruling that Judge Cote's holdings were law of the case as well as a full and fair opportunity to enhance the evidence supporting its position, the Court hereby confirms its "bottom-line" order granting, sua sponte, limited summary judgment in favor of C&S regarding GHI's breach of sections 2.01 and 6.01 of the agreement.

SO ORDERED.

JED S. RAKOFF  U.S.D.J.

Dated: New York, New York
       January 28, 2013